IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| KEITH ANDERSON; MATTHEW COOPER; and SABRINA WARNER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC; WALMART, INC.; WAL-MART.COM USA, LLC; and EBAY, INC.,<br><br>Defendants. | Case No.<br>Jury Demanded |

## CLASS ACTION COMPLAINT

Plaintiffs, Keith Anderson, Matthew Cooper, and Sabrina Warner ("Plaintiffs"), as individuals, on behalf of themselves and all others similarly situated, herein allege as follows:

## I. INTRODUCTION

1. This is a civil action for monetary and injunctive relief brought by Plaintiffs, on behalf of themselves and all others similarly situated, who purchased seatbelt extenders from the Defendants based on false and misleading representations about seatbelt extenders, their characteristics, uses, benefits, and qualities, and for failing to warn against misusing seatbelt extenders in the manners marketed and listed by Defendants.

## II. JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1332 and 1367, because the amount in controversy exceeds the sum of $5,000,000, and the Plaintiffs are citizens of a state different from all Defendants.

3. This Court has personal jurisdiction over Defendants because they transact business in

the United States, including in this judicial district, have substantial aggregate contacts with the United States, including in this judicial district, engaged and are engaging in conduct that has and had a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and purposely availed themselves of the laws of the United States.

4. Under 28 U.S.C. § 1391, venue is proper in this judicial district because a substantial part of the conduct giving rise to Plaintiffs' claims occurred in this judicial district, Defendants transact business in this judicial district, and Defendants reside in this judicial district.

## III. PARTIES

5. Plaintiff Keith Anderson is a citizen of Tennessee residing in Franklin, Tennessee. Mr. Anderson purchased two "universal" seatbelt extenders online from Walmart advertised as appropriate for use with children in car seats or for added comfort.

6. Plaintiff Matthew Cooper is a citizen of Tennessee residing in Maryville, Tennessee. Mr. Cooper purchased a seatbelt extender online from Defendant eBay advertised as appropriate for use with children in car seats or for added comfort.

7. Plaintiff Sabrina Warner is a citizen of Tennessee residing in Knoxville, Tennessee. Ms. Warner purchased a seatbelt extender online from Amazon advertised as appropriate for use with children in car seats or for added comfort.

8. Defendant Amazon.com, Inc. ("Amazon") is an American multinational technology company incorporated in Delaware and headquartered in Seattle, Washington. Amazon is a major online seller of car parts, including seatbelt extenders, throughout the United States.

9. Defendant Walmart, Inc. ("Walmart") is an American multinational company incorporated in Delaware and headquartered in Bentonville, Arkansas. Walmart is a major

online seller of car parts, including seatbelt extenders, throughout the United States.

10. Defendant eBay, Inc. ("eBay") is an American multinational company incorporated in Delaware and headquartered in San Jose, California. e-Bay is a major online seller of car parts, including seatbelt extenders, throughout the United States.

11. Defendant, Wal-Mart.com USA, LLC, is a wholly-owned subsidiary of Defendant Walmart, Inc., and upon information and belief, is the division of Walmart most dedicated to online sales.

## IV. ALLEGATIONS APPLICABLE TO ALL COUNTS

### A. The Truth about Seatbelt Extenders

12. Federal Motor Vehicle Safety Standard (FMVSS) No. 208, *Occupant crash protection*, requires that seat belt assemblies shall be capable of adjustment to fit occupants up to the size of the 95th percentile male (215 lbs.). 49 CFR § 571.208; *see also id.* § 571.209(g).

13. According to the National Highway Traffic Safety Administration ("NHTSA"), the seated hip circumference of the 95th percentile adult male referred to in the regulations is 47 inches.

14. Given the relative low cost of providing additional seatbelt webbing, most all car manufacturers selling in the United States exceed FMVSS No. 208 by providing considerably more seatbelt webbing already integrated into their vehicles, in many instances enough webbing to fit safely around a 99th percentile adult person, with an estimated seated hip circumference of 59 inches.

15. Seatbelt extenders have one—and only one—accepted use. They are meant solely for severely obese adults, i.e., 99th percentile adults and above, who cannot physically fasten their vehicle's seatbelt using all of the seatbelt webbing integrated into their vehicle.

16. A seatbelt extender works by clicking into the male and female ends of the vehicle's existing seatbelt system, providing additional seatbelt webbing to fit around the occupant.

17. Importantly, however, and despite the representations of safety disseminated by Defendants, seatbelt extenders have never been crash tested by any American car manufacturer. In fact, the industry does not produce crash dummies large enough to perform such testing, on the premise that so few people actually need additional seatbelt webbing and that, for those people, a seatbelt extender is at least as safe as having no seatbelt at all.

18. Further, the NHTSA has evaluated the use of seatbelt extenders and concluded that "the risks of belt extenders would be accentuated where the extender is not properly sized for the user or where a person of more average size inadvertently used a belt with an extender attached." 68 Fed. Reg 2480, 2482 (Jan. 17, 2003).

19. The NHTSA's observation here is based on basic seatbelt science. What matters most, in terms of effectiveness during a crash or loading event, is geometry. The tension needs to be on the seatbelt webbing—not on the buckle.

20. Despite the extremely limited, single accepted use of seatbelt extenders, their sales have proliferated over the last decade.

21. Beginning in the early 2000s, car manufactures began doing away with bulky seat belt buckle stalks in the rear seats of passenger vehicles.

22. Due to this near universal design change, in later model vehicles, seatbelt receptacles are now pocketed or recessed in the backseat. This design is safer for adults, because it places the tension appropriately closer to the pelvic region and ensures that, during a crash, the seatbelt's webbing—not the buckle—receives the load forces.

23. While pocketed seatbelt receptacles are safer, they create an inconvenience for

4

Case 3:19-cv-01151   Document 1   Filed 12/21/19   Page 4 of 14 PageID #: 4

occupants wearing bulky coats and clothing, or people who wear bulky utility belts, like police officers. Importantly, pocketed seatbelt receptacles also pose an especially aggravating challenge for parents who have children riding in child seats and booster seats, by making it much harder to install child seats, and nearly impossible for a child riding in a booster seat to buckle-up on their own.

24. For these consumers, a seatbelt extender seems like a practical solution, but they are uninformed of the substantial risk of harm to which they are subjecting themselves and their children.

25. In short, as alluded to by the NHTSA, introducing a seatbelt extender changes the geometry and alignment of the seatbelt system. It creates a hazard and a significant risk that the seatbelt extender will fail during a crash.

26. What happens is that the loading forces get applied to the female end of the seatbelt extender buckle, rather than on the webbing, and the extender easily fails.

27. This change in geometry puts the seatbelt extender buckle into a bending motion that allows the locking "pawl" inside the seatbelt extender's female receptacle to slip out of the metal tongue of the integrated belt, releasing the passenger during an accident, because the tension is put on the seatbelt extender's buckle rather than on the webbing.

28. Although this poses a substantial risk of injury for any person using an extender, save for those very few Americans whose hip circumference actually exceeds the 99th percentile, this is particularly problematic in the context of using seatbelt extenders with child restraints, because there, crash forces are guaranteed to be applied to the buckle, and not on the webbing.

29. This is why many major car manufacturers, including Audi, Chevrolet, Nissan, Toyota and many others, specifically warn that using an extender will injure or kill a child if used in

conjunction with a child restraints.

> **⚠ CAUTION**
> ■ **Child restraint precautions**
> ● Do not use the seat belt extender when installing a child restraint system on the front or rear passenger seat. If installing a child restraint system with the seat belt extender connected to the seat belt, the seat belt will not securely hold the child restraint system, which could cause death or serious injury to the child or other passengers in the event of a sudden stop, sudden swerve or accident.

(2012 Nissan Juke, Owners' Manual.)

> Never use it for securing child seats. To wear it, attach it to the regular safety belt. See the instruction sheet that comes with the extender.

(2013 Chevrolet Malibu, Owners' Manual.)

### B. Defendants' Misrepresentations Concerning Seatbelt Extenders

30. Plaintiff Keith Anderson is a plus-sized person who falls well below the 99th percentile. He also has a child riding in a booster seat. He purchased two "universal" seatbelt extenders online from Walmart for himself and his child.

31. The Walmart listing falsely states that extenders are "[p]erfect for safety and comfort, and ideal for use with baby and infant seats," and features a picture of the extender being used with a child in a booster seat.



(Walmart Screenshot, attached as Exhibit 1.)

32. Plaintiff Matthew Cooper has a child who rides in a convertible booster seat. He purchased a seatbelt extender online from Defendant eBay listed as a "14" Universal Safety Seatbelt Extender Extension Car Seat Lap Belt Buckle Baby."

33. The eBay listing also features a picture of the extender being used with a booster seat.



(eBay Screenshot, attached as Exhibit 2.)

34. Plaintiff Sabrina Warner has a child who rides in a booster seat. Ms. Warner purchased a seatbelt extender online from Amazon listed as a "Seat Belt Adjuster for Kids, 2 Pack Seat Belt Positioner Child Seatbelt Adjuster Seat Belts Protection and Safety for Kids."

35. Additionally, the Amazon listing advertises other "baby" products alongside the

7

extender in question. (Amazon Screenshot, attached as Exhibit 3.)

36. All defendants exercise substantial control over the representations and listings referenced above, together with all listings and representations contained on their online platforms.

## V. CLASS ACTION ALLEGATIONS

37. Plaintiffs initially propose a Nationwide class (hereinafter, the "Class") in litigating this case, as defined as follows:

> All individuals in the United States who purchased seatbelt extenders from Defendants.

38. **Numerosity of the Class** – The members of the Class are so numerous that their individual joinder is impractical. Plaintiffs are informed and believe that there are at least thousands of purchasers in the class. Inasmuch as the class members may be identified through business records regularly maintained by Defendants and its employees and agents, and through the media, the number and identities of class members can be ascertained. Members of the Class can be notified of the pending action by email, mail, and supplemented by published notice, if necessary;

39. **Existence and Predominance of Common Question of Fact and Law** – There are questions of law and fact common to the Class. These questions predominate over any questions affecting only individual class members. The common legal and factual issues include, but are not limited to:

   a. Whether Defendants' advertisements regarding seatbelt extenders were false and deceptive in advertising;

   b. Whether Defendants' advertisements failed to provide material disclosures regarding the proper characteristics, uses, benefits and qualities of seatbelt

extenders;

  c. Whether Defendants' conduct violates the laws set forth in the claims for relief.

40. **Typicality** – The claims of the representative Plaintiffs are typical of the claims of each member of the Class. Plaintiffs, like all other members of the Class, have sustained damages arising from Defendant's violations of the laws, as alleged herein. The representative Plaintiffs and the members of the Class were and are similarly or identically harmed by the same unlawful, deceptive, unfair, systematic, and pervasive pattern of misconduct engaged in by Defendant.

41. **Adequacy** – The representative Plaintiffs will fairly and adequately represent and protect the interests of the Class members and have retained counsel who are experienced and competent trial lawyers in complex litigation and class action litigation. There are no material conflicts between the claims of the representative Plaintiffs and the members of the Class that would make class certification inappropriate. Counsel for the Class will vigorously assert the claims of all Class Members.

42. **Predominance and Superiority** – This suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3), because questions of law and fact common to the Class predominate over the questions affecting only individual members of the Class and a class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by individual class members are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct. Further, it would be virtually impossible for the members of the Class to individually redress effectively the wrongs done to them. Even if Class members themselves could afford such individual litigation, the court system could not. In addition, individualized litigation increases the delay and expense to all parties and to the court system resulting from complex

legal and factual issues of the case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties; allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

43. The Class Plaintiffs contemplate the eventual issuance of notice to the proposed Class members setting forth the subject and nature of the instant action. Upon information and belief, Defendant's own business records and electronic media can be utilized for contemplated notices. To the extent that any further notices may be required, the Class Plaintiffs would contemplate the use of additional media and/or mailings.

44. In addition, this action is properly maintained as a Class Action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that, without class certification and determination of declaratory, injunctive, statutory and other legal questions within the class format, prosecution of separate actions by individual members of the Class will create the risk of:

    a. Inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the parties opposing the Class; or

    b. Adjudication with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests; The parties opposing the Class have acted or refused to act on grounds generally applicable to each member of the Class, thereby making appropriate final injunctive or corresponding declaratory relief with the respect to the Class

as a whole; or

  c. Common questions of law and fact exist as to the members of the Class and predominate over any questions affecting only individual members, and a Class Action is superior to other available methods of the fair and efficient adjudication of the controversy, including consideration of: (i) the interest of the members of the Class in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning controversy already commenced by or against members of the Class; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the difficulties likely to be encountered in the management of a Class Action.

## VI. CLAIMS FOR RELIEF

### COUNT I
### (Violation of Arkansas, California, Tennessee, and Washington Consumer Fraud Laws)

45. Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

46. At all relevant times there was in full force and effect the Arkansas Deceptive Trade Practices Act, the California Unfair Business Practices Act and false advertising laws, the Tennessee Consumer Protection Act, the Washington Consumer Protection Act, and similar deceptive practices acts throughout the United States.

47. Defendants violated each of the foregoing Acts by falsely advertising the approval, characteristics, uses, benefits and qualities of seatbelt extenders, by representing and implying that seatbelt extenders have been safety tested, and by encouraging the blatant misuse of seatbelt extenders.

48. Defendants violated the foregoing Acts, and Class Members' similar state consumer protection provisions.

49. As a direct and proximate result of these violations, Plaintiffs and the Class Members have suffered pecuniary damages for which they are entitled to be compensated.

50. Defendants willfully and knowingly violated the foregoing consumer protection acts and laws, thereby entitling Plaintiff to treble and exemplary damages.

51. Plaintiffs are entitled to attorneys' fees and costs based on Defendants' violations of the foregoing consumer protection acts and laws.

## Count II
### (Common Law Fraud)

52. Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

53. The misrepresentations, nondisclosure, and/or concealment of material facts made by Defendant to Plaintiffs and the members of the Class, as set forth above, were known, or through reasonable care should have been know, by Defendant to be false and material and were intended by Defendant to mislead Plaintiffs and the members of the Class.

54. Plaintiffs and the Class were actually misled and deceived and were induced by Defendant to purchase the subject extender which they would not otherwise have purchased.

55. As a result of the conduct of Defendants, Plaintiffs and the Class Members have been damaged.

## Count III
### (Negligent Misrepresentation)

56. Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

57. Defendants had a duty to provide honest and accurate information to its customers could make informed decisions on the substantial purchase of automobile safety equipment.

58. Defendants specifically and expressly misrepresented material facts to Plaintiffs and Class members as discussed above.

59. Defendants knew, or in the exercise of reasonable diligence should have known, that the ordinary consumer would be misled by Defendants misleading and deceptive advertisements.

60. Plaintiffs and the Class members justifiably relied on Defendants' misrepresentations and have been damaged thereby.

### Punitive Damages

50. Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

51. Defendants acted willfully, intentionally, or at the very least with malice or reckless indifference, in misrepresenting the safety, testing, and uses of seatbelt extenders, thus entitling Plaintiffs and the Class Members to punitive damages.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court:

1. Issue and Defendants be required to answer this Complaint within the time prescribed by the Federal Rules of Civil Procedure.

2. Enter and order certifying that the action may be maintained as a Class Action as defined herein and appointing Plaintiffs and their counsel of record to represent the defined Class;

3. Enter an order permanently enjoining Defendants from continuing to misrepresent the

nature, safety, and uses of seatbelt extenders;

4. Award damages against Defendants under the causes of action for violation of the TCPA, fraud, and negligent misrepresentation;

5. Award treble damages against Defendants under the Tennessee Consumer Protection Act ("TCPA") and other statutes as may be applicable;

6. Award punitive damages against Defendants under the common law and statutes as may be applicable;

7. Award reasonable attorney's fees and costs under the TCPA and other statutes as may be applicable;

8. Award prejudgment interest to the extent allowed by law; and

9. Grant such other legal and equitable relief as the Court may deem appropriate.

Respectfully submitted,

/s/Richard E. Collins
Dan Channing Stanley (TN Bar No. 021002)
Richard E. Collins (TN Bar No. 024368)
STANLEY, KURTZ & COLLINS, PLLC
422 S. Gay Street, Suite 301
Knoxville, TN 37902
(865) 522-9942
(865) 522-9945 fax
dan@knoxvilleattorney.com
richard@knoxvilleattorney.com

*Counsel for Plaintiffs/Class Counsel*