IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| KEITH ANDERSON; MATTHEW COOPER; and SABRINA WARNER, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 3:19-cv-01151 |
| AMAZON.COM, INC.; WALMART, INC., WAL-MART.COM USA, LLC; and EBAY, INC., | ) ) ) ) | Judge Eli J. Richardson<br>Magistrate Judge Jeffery S. Frensley |
| Defendants. | ) ) | |

**DEFENDANTS WALMART, INC. AND WAL-MART.COM USA, LLC'S
MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION
AND TO DISMISS**

In support of their Motion to Compel Arbitration and to Dismiss, Defendants Walmart, Inc. and Wal-Mart.com USA, LLC (collectively "Walmart") submit this Memorandum Brief. Because Plaintiff Keith Anderson ("Anderson") purchased the products at issue via Walmart's website and expressly agreed to the arbitration provision in the website's Terms of Use, Plaintiff must pursue his claims against Walmart in an individual arbitration proceeding. Accordingly, Walmart requests the Court to compel arbitration and dismiss the Complaint against Walmart.

**INTRODUCTION**

Plaintiff Anderson, along with Plaintiffs Matthew Cooper and Sabrina Warner, filed this putative class action against Walmart and Defendants Amazon.com, Inc. ("Amazon") and eBay, Inc. ("eBay") for alleged misrepresentations regarding the sale of products known generally as seatbelt extenders. Anderson is the only named plaintiff to assert any claims against Walmart. (*See generally* Dkt. No. 1 ("Complaint") ¶¶ 5-7, 30-35). The crux of Anderson's suit is that

Walmart allows third-party sellers to market allegedly unsafe seatbelt extenders on Walmart's website accompanied by statements about the safety and effectiveness of the products. (*Id.* at ¶¶ 1, 30-31). Anderson asserts claims sounding in misrepresentation and consumer fraud. (*See id.* at ¶¶ 45-60).

While Anderson's claims against Walmart lack merit for a number of reasons[1], this Court is not the proper forum to resolve these claims. Anderson and Walmart[2] are parties to a binding arbitration provision that requires an arbitrator, and not a court, to resolve Anderson's claims against Walmart[3] on an individual basis. Indeed, by placing an order through Walmart's website, Anderson agreed to Walmart's Terms of Use, which contain the binding Arbitration Provision (the "Arbitration Provision"). A link to the Terms of Use are conspicuously displayed on the final page of the check out process where Anderson clicked the "Place Order" button to submit his order for the products at issue.

Anderson's agreement to arbitrate his claims against Walmart on an individual basis is valid, binding, and enforceable under Section 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2. Without doubt, all of his claims fall within the broad parameters of the Arbitration Provision. Under Sections 3 and 4 of the FAA, 9 U.S.C. §§ 3-4, the Court should dismiss this case and compel Anderson to arbitrate his claims against Walmart in accordance with the Arbitration Provision in Walmart's Terms of Use.

---

[1] Plaintiffs' Complaint is deficient for multiple reasons and fails to state claims for which relief may be granted. Furthermore, as plead in Walmart's Answer to Plaintiff's Complaint (Dkt. No. 26), Walmart is entitled to immunity from Plaintiffs' claims pursuant to the Communications Decency Act, 47 U.S.C. §§ 230 *et seq.*

[2] Walmart's Terms of Use define "Walmart" as Wal-Mart.com USA, LLC and Wal-Mart Stores, Inc., including any current and future subsidiaries of Wal-Mart Stores, Inc. (*See* Declaration of Paoloa Catania ("Catania Decl.") Ex. 2 § 1). Wal-Mart Stores, Inc. is now legally named Walmart, Inc. (*See* Walmart, Inc. Form 8-k, Feb. 1, 2018, available at https://www.sec.gov/Archives/edgar/data/104169/000010416918000013/form8-kx212018.htm). Thus, both Walmart entities named as defendants are subject to the Arbitration Provision in Walmart's Terms of Use.

# BACKGROUND

**A. All of Anderson's Claims Against Walmart Arise Out of His Purchase Via Walmart.com.**

Plaintiffs' claims against Walmart and the other Defendants can be summarized as follows: seatbelt extenders are allegedly dangerous, *see* Complaint at ¶¶ 12-29; the Defendants sell, or allow others to sell, seatbelt extenders via listings on their respective websites that advertise the products as safe for infant car seats and for plus-sized individuals, *see id.* at ¶¶ 30-36; and therefore the Defendants are committing fraud and making material misrepresentations to each and every person that purchased one of these products, *see id.* at ¶¶ 45-60. Of the numerous paragraphs set forth in the Complaint, only two paragraphs deal specifically with Anderson's claims against Walmart:

> 30. Plaintiff Keith Anderson is a plus-sized person who falls well below the 99th percentile. He also has a child riding in a booster seat. He purchased two "universal" seatbelt extenders online from Walmart for himself and his child.
>
> 31. The Walmart listing falsely states that extenders are "[p]erfect for safety and comfort, and ideal for use with baby and infant seats," and features a picture of the extender being used with a child in a booster seat.

(*Id.* at ¶¶ 30-31). Notably, Plaintiffs Matthew Cooper and Sabrina Warner make no claims against Walmart, nor does Anderson make any claims against Defendants Amazon or eBay. (*See id.* at ¶¶ 5-7, 30-35).

From the sparse facts alleged, Anderson asserts three causes of action against Walmart: (1) violation of deceptive trade practices statutes in Arkansas, California, Tennessee, Washington State and other states;[4] 2) common law fraud; and 3) negligent misrepresentation. (*See id.* at ¶¶ 45-60).

---

[4] Plaintiffs inexplicably assert these statutory violations against all of the named Defendants, without explanation as to why each Defendant would be liable under each and every consumer protection statute, including statutes where each Defendant is not headquartered and where the named Plaintiffs do not reside.

3

### B. Anderson Accepted Walmart's Terms of Use

Anderson alleges he purchased two universal seatbelt extenders online at Walmart.com. (*Id.* at ¶ 30). Indeed, attached as Exhibit 1 to the Complaint is a screenshot of a listing for two universal seatbelt extenders found on Walmart's website, www.walmart.com. (*Id*. at Ex. 1).

Walmart's records indicate that Anderson made the purchase via Walmart's website using a mobile device on December 6, 2019. (Catania Decl. at ¶ 4). In order to make this purchase, Anderson, and any other customer who makes a purchase through Walmart.com, must generally complete a standard check out process ("Check Out Process"). (Declaration of David Comer ("Comer Decl.") at ¶ 2).

During the first step of the Check Out Process, the customer is presented with a page that contains, among other things, a list of the items the customer has in his/her shopping cart. (*Id.* at ¶ 3). To proceed with the order, the customer must click a blue "Check Out" button. (*Id.*). A screenshot of this step of the Check Out Process on the Walmart.com website for a sample order is below:



(*Id.*).

After clicking "Check Out," the customer is taken to the next step of the Check Out Process. (*Id.* at ¶ 5). When placing an order as a guest – that is, when not logged into a Walmart.com account – the customer is presented with a page that contains, among other things, a selection of delivery or pickup options and fields to input his/her delivery address (if applicable) and payment information. (*Id.*). After the customer has completed these questions, he/she must click a blue "Review Your Order" button to proceed with the order. (*Id.*).

The next step of the Check Out Process is a page that contains, among other things, the subtotal, any delivery charges, any taxes or fees, and the estimated total. (*Id.* at ¶ 5). Among other things, this page contains the following language: "By clicking Place Order, you agree to Walmart's Updated <u>Privacy Policy</u> and <u>Terms of Use</u>." (*Id.*). The words "<u>Privacy Policy</u>" and "<u>Terms of Use</u>" are hyperlinks to Walmart's Privacy Policy and Walmart's Terms of Use. (*Id.*). If a customer clicks on the words "<u>Privacy Policy</u>" or "<u>Terms of Use</u>"—which are in bold and underlined—the customer will be taken to Walmart's Privacy Policy or Terms of Use, respectively. (*Id.*).

To complete the order, the customer must click a blue "Place Order" button. (*Id.* at ¶ 6). The customer cannot complete the order without clicking the "Place Order" button. (*Id.*). A screenshot of this step of the Check Out Process for a sample order, when scrolled to the bottom of the page, is below:



(*Id.*).

By making the very purchase Anderson describes in his Complaint, Anderson was on notice of and, agreed to be bound by, the Terms of Use when he clicked "Place Order" and consummated the transaction giving rise to his claims in this case.

### C. The Terms of Use Include a Binding Arbitration Provision

When Anderson made the purchase at issue in this case, and agreed to the Walmart Terms of Use, the Terms of Use contained a binding arbitration provision. (Catania Decl. at ¶ 6, Ex. 2).[5] At the very top of the Terms of Use is the following notification: "Please review these Terms of Use carefully. They include a binding arbitration clause (see Section 20) requiring you

---

[5] Paragraph 30 of the Complaint does not allege when Anderson purchased the products at issue. However, Walmart's internal records indicate that Anderson purchased the products on December 6, 2019. (Catania Decl. at ¶ 4, Ex. 1).

and us to arbitrate our claims instead of suing in court." (*Id.* at Ex. 2). From the top of the Terms of Use, users may also directly access each individual section directly by hyperlink, including the Arbitration Provision found in Section 20. (*Id.*).

In Section 20, entitled "**Disputes & Arbitration; Applicable Law**" (emphasis original), the Terms of Use make clear that "[u]sing or accessing the Walmart Sites constitutes your acceptance of this Arbitration provision." (*Id.* at Ex. 2, § 20). Not only is the scope of the Arbitration broad and covers all disputes arising out of or relating to the parties' relationship, it also expressly relates to the precise claims Anderson has raised against Walmart here:

> EXCEPT FOR DISPUTES THAT QUALIFY FOR SMALL CLAIMS COURT, ALL DISPUTES ARISING OUT OF OR RELATED TO THESE TERMS OF USE OR ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU AND WALMART, **<u>WHETHER BASED IN CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION, OR ANY OTHER LEGAL THEORY</u>**, WILL BE RESOLVED THROUGH FINAL AND BINDING ARBITRATION BEFORE A NEUTRAL ARBITRATOR INSTEAD OF IN A COURT BY A JUDGE OR JURY, AND YOU AGREE THAT WALMART AND YOU ARE EACH WAIVING THE RIGHT TO SUE IN COURT AND TO HAVE A TRIAL BY A JURY. YOU AGREE THAT ANY ARBITRATION WILL TAKE PLACE ON AN INDIVIDUAL BASIS; CLASS ARBITRATIONS AND CLASS ACTIONS ARE NOT PERMITTED AND YOU ARE AGREEING TO GIVE UP THE ABILITY TO PARTICIPATE IN A CLASS ACTION.

(*Id.*). (all-caps in original, bolding and underlined added).

### D. The Arbitration Provision Offers a Fair and Efficient Method for Resolution of Anderson's Claims Against Walmart.

The Arbitration Provision provides Anderson with a consumer-friendly, efficient, and flexible means of resolving his claims against Walmart. Indeed, the Arbitration Provision requires the arbitrator to "conduct hearings, if any, by teleconference or videoconference, rather than by personal appearances, unless the arbitrator determines upon request by [Anderson] or by [Walmart] that an in-person hearing is appropriate." (*Id.* at Ex 1, § 20). The Arbitration Provision requires that such a hearing "will be held at a location which is reasonably convenient to both

parties with due consideration of their ability to travel and other pertinent circumstances." (*Id.*). While the arbitrator may determine an arbitral location, in the event the parties cannot agree on a location, Walmart agrees to arbitrate this dispute in a locale convenient to Anderson and his counsel, should they request an in-person hearing. (*Id.*).

The Arbitration Provision further provides that the arbitration proceeding "will be administered by Judicial Arbitration Mediation Services, Inc. ('JAMS') pursuant to the JAMS Streamlined Arbitration Rules & Procedures effective July 1, 2014 (the 'JAMS Rules') and as modified by this agreement to arbitrate." (*Id.*). The Arbitration Provision otherwise identifies the location of the "JAMS Rules, including instructions for bringing arbitration, [which] are available on the JAMS website at http://www.jamsadr.com/rules-streamlined-arbitration[.]" (*Id.*).

## LAW AND ARGUMENT

### A. The FAA and the Sixth Circuit's Four-Pronged Test Require Anderson to Arbitrate His Claims Against Walmart.

The Supreme Court has interpreted section 2 of the FAA as making arbitration agreements "valid, irrevocable, and enforceable" as written (except upon such grounds that would result in the revocation of any contract). *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S. Ct. 1740, 1758 (2011) (quoting 9 U.S.C. § 2). Section 4 of the FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement." *Id.* at 1754 (quoting 9 U.S.C. § 4). The Supreme Court has further interpreted the FAA as establishing that, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983), unless it would "override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated," *EEOC v. Waffle House, Inc.,* 534 U.S.

279, 294 (2002) (internal citation omitted). The Sixth Circuit "has stated even more forcefully that any doubts are to be resolved in favor of arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 503-04 (6th Cir. 2007) (internal quotations and citations omitted).

"The Sixth Circuit analyzes the following four factors to determine whether to grant motions to dismiss and compel arbitration: (1) Whether the parties agreed to arbitrate; (2) the scope of the agreement to arbitrate; (3) if federal statutory claims are involved, whether Congress intended those claims to be arbitrable; and (4) if only some of the claims are subject to arbitration, whether the nonarbitrable claims should be stayed pending arbitration." *Andrews v. TD Ameritrade, Inc.*, 596 F. App'x 366, 371 (6th Cir. 2014) (citing *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003)). All four factors of this test are met here.

### 1. <u>Anderson and Walmart Agreed to Arbitrate Their Claims Against Each Other.</u>

By clicking the "Place Order" button when purchasing the two seatbelt extenders via Walmart.com, Anderson agreed to "Walmart's updated Privacy Policy and Terms of Use." (Comer Decl. at ¶ 6). As described above, those Terms of Use, which were available to Anderson on the final page of the Check Out Process, contain a valid and enforceable Arbitration Provision and a class action waiver:

> EXCEPT FOR DISPUTES THAT QUALIFY FOR SMALL CLAIMS COURT, ALL DISPUTES ARISING OUT OF OR RELATED TO THESE TERMS OF USE OR ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU AND WALMART, WHETHER BASED IN CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION, OR ANY OTHER LEGAL THEORY, WILL BE RESOLVED THROUGH FINAL AND BINDING ARBITRATION BEFORE A NEUTRAL ARBITRATOR INSTEAD OF IN A COURT BY A JUDGE OR JURY, AND YOU AGREE THAT WALMART AND YOU ARE EACH WAIVING THE RIGHT TO SUE IN COURT AND TO HAVE A TRIAL

BY A JURY. YOU AGREE THAT ANY ARBITRATION WILL TAKE PLACE ON AN INDIVIDUAL BASIS; CLASS ARBITRATIONS AND CLASS ACTIONS ARE NOT PERMITTED AND YOU ARE AGREEING TO GIVE UP THE ABILITY TO PARTICIPATE IN A CLASS ACTION.

(Comer Decl. at ¶ 5; Catania Decl. Ex. 1 § 20) (all-caps in original).

Courts have routinely held that these "click through" or "click-wrap" agreements are enforceable, especially in the context of arbitration provisions and class action waivers. *See, e.g., Gorny v. Wayfair, Inc.*, No. 18C8259, 2019 WL 2409595, at *6 (N.D. Ill. June 7, 2019) (compelling the plaintiff's consumer class action claims to individual arbitration based on an arbitration provision in the terms of use that were available directly below the "Place Your Order" button the plaintiff used to make his online purchase); *Asa v. Verizon Comm's, Inc.*, No. 1:17-cv-256, 2017 WL 5894543, at *5-7 (E.D. Tenn. Nov. 29, 2017) (J. Phillips) (enforcing jury waiver and arbitration provision administered through a click-wrap process on the defendant's website); *see also Adler v. Dell, Inc.*, No. 08-CV-13170, 2008 WL 5351042, at *13 (E.D. Mich. Dec. 18, 2008) (compelling the parties to arbitrate the plaintiff's class action consumer law claims on an individual basis where arbitration provision in website's Terms and Conditions of Sale were available by hyperlink on each page of the online ordering process). For the reasons discussed, the same result should follow here. By "clicking through" and accepting the Terms of Service, Anderson agreed to arbitrate his claims individually against Walmart.

    **2.  Anderson's Claims Against Walmart Fall Within the Scope of the Arbitration Provision.**

When determining the scope of an arbitration agreement, "[a] proper method of analysis [] is to ask if an action could be maintained without reference to the contract or relationship at issue." *Fazio*, 340 F.3d at 395. The answer here is clearly no. By the plain language of the Arbitration Provision, Anderson agreed to arbitrate <u>all</u> disputes with Walmart "arising out of or

10

Case 3:19-cv-01151   Document 34   Filed 04/03/20   Page 10 of 14 PageID #: 215

related to these terms of use or any aspect of the relationship between [Anderson] and Walmart, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory," except for "disputes that qualify for small claims court." (Catania Decl. Ex. 1 § 20).

In light of the three causes of action set forth in Anderson's Complaint (*See* Complaint ¶¶ 45-60), there is no way Anderson can maintain this action without referencing his "relationship with Walmart" arising from the purchase via Walmart's website and the alleged misrepresentations on the website about the safety, comfort, and suitability of seatbelt extenders. (*See* Complaint at ¶¶ 30-31). Not only are these claims firmly grounded on the relationship between Anderson and Walmart, they are also "based in contract, tort, statute, fraud, [and] misrepresentation," which theories are expressly referenced for in the Arbitration Provision (Catania Decl. Ex. 1 § 20). Anderson's claims fall squarely within the scope of the Arbitration Provision.

### 3. **Anderson Asserts No Federal Claims Against Walmart.**

The Complaint does not assert any claims against Walmart, or any of the other named Defendants, arising from any federal statute or federal common law. Therefore, this factor is also satisfied in favor of compelling Anderson and Walmart to arbitration.

### 4. **All of Anderson's Claims Are Subject to Arbitration.**

As discussed above, Anderson agreed to arbitrate *all* disputes with Walmart "arising out of or related to these terms of use or any aspect of the relationship between [Anderson] and Walmart, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory," except for "disputes that qualify for small claims court." (Catania Decl. Ex. 1 § 20). Thus, each and every claim Anderson asserts against Walmart falls within the scope of the Arbitration Provision Anderson agreed to when he clicked "Place Order" on Walmart's mobile

website. There is no plausible argument that some of the claims in the Complaint are not arbitrable.

Because all four factors set forth by the Sixth Circuit in *Andrews* are easily satisfied here, the Court should compel Anderson and Walmart to submit to binding, individual arbitration.

### B. Because All of Anderson's Claims Must Be Submitted to Arbitration, This Case Should Be Dismissed.

Once the Court determines that all issues associated with Anderson's claims must be referred to arbitration, it is appropriate for the Court to dismiss the Complaint for lack of subject matter jurisdiction. "'[W]hen *all* of the issues raised in the district court must be submitted to arbitration,' it is appropriate for the court to dismiss the case." *Asbell v. Education Affiliates, Inc.*, No. 3:12-cv-00579, 2013 WL 1775078 at *2 (M.D. Tenn. Apr. 25, 2013) (emphasis in original) (quoting *Green v. Ameritech Corp.,* 200 F.3d 967, 973 (6th Cir. 2000)); *see also Andrews v. TD Ameritrade, Inc.*, 596 F. App'x 366, 372-73 (6th Cir. 2014) (affirming dismissal for lack of subject-matter jurisdiction where parties' dispute was clearly covered by arbitration clause); *Marshall v. ITT Tech. Inst.*, No. 3:11-CV-552, 2012 WL 1565453, at *5 (E.D. Tenn. May 1, 2012) ("[T]he Court's ability to dismiss a case is not limited when all issues raised in the complaint are arbitrable."). Accordingly, in addition to compelling arbitration, the Court should dismiss the Complaint because all the issues arising in Plaintiffs' Complaint must be submitted to arbitration.[6]

### CONCLUSION

For the compelling reasons stated, Walmart respectfully requests that the Court compel Plaintiff Anderson to submit to individual arbitration and dismiss the Complaint against Walmart.

---

[6] If a plaintiff's claims are subject to a valid arbitration agreement, a court must, at a minimum, stay litigation and compel arbitration of those claims. *See* 9 U.S.C. §§ 3, 4.

Respectfully submitted,

s/*Austin K. Purvis*
Samuel L. Felker (TN BPR No. 9045)
Austin K. Purvis (TN BPR No. 32329)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
211 Commerce Street, Suite 800
Nashville, Tennessee 37201
Telephone: (615) 726-5706
Facsimile: (615) 744-5706
samfelker@bakerdonelson.com
apurvis@bakerdonelson.com

*Counsel for Walmart*

# CERTIFICATE OF SERVICE

      I hereby certify that I electronically filed a copy of the foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to all parties registered with the Court's electronic filing system, including the following:

| | |
|---|---|
| Dan Channing Stanley<br>Richard E. Collins<br>STANLEY, KURTZ & COLLINS, PLLC<br>422 S. Gay Street, Suite 301<br>Knoxville, TN 37902 | Scott Burnett Smith<br>BRADLEY ARANT BOULT CUMMINGS LLP<br>200 Clinton Avenue West<br>Suite 900<br>Huntsville, AL 35801 |
| Lauren Paxton Roberts<br>STITES &HARBISON PLLC<br>401 Commerce Street, Suite 800<br>Nashville, TN 37219 | Lela Hollabaugh<br>BRADLEY ARANT BOULT CUMMINGS LLP<br>1600 Division Street<br>Suite 700<br>Nashville, TN 37203 |

      this 3rd day of April, 2020.

                                          s/*Austin K. Purvis*
                                          Austin K. Purvis