IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| KEITH ANDERSON, MATTHEW COOPER, and SABRINA WARNER, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | NO. 3:19-cv-01151 JUDGE RICHARDSON |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| AMAZON.COM, INC., WALMART, INC., WAL-MART.COM USA, LLC, and EBAY, INC., et al., | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Walmart, Inc. and Wal-Mart.com USA, LLC (collectively "Walmart")'s[1] Motion to Compel Arbitration and to Dismiss (Doc. No. 33, "Motion") as to Plaintiff Keith Anderson ("Plaintiff Anderson"), supported by an accompanying Memorandum of Law (Doc. No. 34). Plaintiff Anderson filed a response (Doc. No. 42), and Defendant replied (Doc. No. 43). For the reasons stated herein, Defendant Walmart's Motion is **GRANTED**.

---

[1] Walmart indicates that both Walmart, Inc. and Wal-Mart.com USA, LLC are covered under the arbitration agreement at issue. (Doc. No. 34 at 2; Doc. 35-2 at 2). Plaintiff does not dispute this assertion, and the Court will consider the Terms of Use as applicable to both Defendants.

1

## BACKGROUND[2]

On December 6, 2019, Plaintiff Anderson purchased two "Universal Auto Car Seat Belt Extenders 9 inch" as a guest customer from the Walmart website. (Doc. No. 35 at 2). To purchase an item through the Walmart website, a customer must complete a checkout process. (Doc. No. 36 at 1). During the first step of this checkout process, a customer views a list of items in their shopping cart and an estimated total. (*Id.*). In order to proceed, the customer must then click a blue "Check Out" button. (*Id.*). After clicking this button, a guest customer (a customer without a Walmart website account) will select delivery and other options before clicking a "Review Your Order" button. (*Id.* at 2). As revealed in the image below, the next page contains information about the order and the following language: "By clicking Place Order, you agree to Walmart's Updated Privacy Policy and Terms of Use." (*Id.*). The words "Privacy Policy" and "Terms of Use" are hyperlinks which will take a customer to Walmart's Privacy Policy and Terms of Use. (*Id.*). Both phrases are bolded and underlined. (*Id.*). To complete the order, a customer must click on a blue "Place Order" button. (*Id.* at 3). The order cannot be completed without clicking this button. (*Id.*).

---

[2] The background facts are drawn from the declarations submitted by Walmart in support of its Motion and from the Complaint. (Doc. Nos. 1, 34). None of the facts recited herein are disputed by the parties. The Court therefore will rely on them. *See Yaroma v. Cashcall, Inc.*, 130 F. Supp. 3d 1055, 1062 (E.D. Ky. 2015) ("in evaluating motions to compel arbitration, 'courts treat the facts as they would in ruling on a summary judgment.' " (quoting *Kovac v. Superior Dairy, Inc.*, 930 F. Supp. 2d 857, 864 (N.D. Ohio 2013))).



(*Id.* at 2).

At the top of the first page of Walmart's Terms of Use are the words: "Please review these Terms of use carefully. They include a binding arbitration clause (see Section 20) requiring you and us to arbitrate our claims instead of suing in court." (Doc. 35-2 at 2). Further down on the same page, in bold and all capitals, the Terms of Use state: "**IMPORTANT: THIS AGREEMENT CONTAINS A MANDATORY ARBITRATION PROVISION THAT, AS FURTHER SET FORTH IN SECTION 20 BELOW, REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES. THIS MEANS THAT YOU AND WALMART ARE EACH GIVING UP OUR RIGHTS TO SUE EACH OTHER IN COURT OR IN CLASS ACTIONS OF ANY KIND.**" (*Id.*)

Section 20 of the Terms of Use ("Arbitration Clause") states, in part:

3

PLEASE READ THIS SECTION CAREFULLY, IT MAY SIGNIFICANTLY AFFECT YOUR LEGAL RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT. Using or accessing the Walmart Sites constitutes your acceptance of this Arbitration provision. Please read it carefully as it provides that you and Walmart will waive any right to file a lawsuit in court or participate in a class action for matters within the terms of the Arbitration provision.

EXCEPT FOR DISPUTES THAT QUALIFY FOR SMALL CLAIMS COURT, ALL DISPUTES ARISING OUT OF OR RELATED TO THESE TERMS OF USE OR ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU AND WALMART, WHETHER BASED IN CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION, OR ANY OTHER LEGAL THEORY, WILL BE RESOLVED THROUGH FINAL AND BINDING ARBITRATION BEFORE A NEUTRAL ARBITRATOR INSTEAD OF IN A COURT BY A JUDGE OR JURY. AND YOU AGREE THAT WALMART AND YOU ARE EACH WAIVING THE RIGHT TO SUE IN COURT AND TO HAVE A TRIAL BY A JURY. YOU AGREE THAT ANY ARBITRATION WILL TAKE PLACE ON AN INDIVIDUAL BASIS; CLASS ARBITRATIONS AND CLASS ACTIONS ARE NOT PERMITTED AND YOU ARE AGREEING TO GIVE UP THE ABILITY TO PARTICIPATE IN A CLASS ACTION.

(*Id.* at 15-16).

On December 21, 2019, Plaintiff Anderson, together with Plaintiffs Matthew Cooper and Sabrina Warner (collectively "Plaintiffs"), filed the Complaint in this case on behalf of themselves and all others similarly situated, alleging fraud and negligent misrepresentation regarding the sale of seatbelt extenders. (Doc. No. 1 at ¶ 1). In their Complaint, Plaintiffs allege that Defendants Amazon.com, Inc., Walmart, Inc., Wal-Mart.com USA, LLC, and eBay, Inc. (collectively "Defendants") fraudulently misled consumers regarding the proper usage and safety ratings of seatbelt extenders. (*Id.* at ¶¶ 12-36). Specifically, Plaintiffs allege that Walmart advertised a seatbelt extender as safe for use with children's car seats despite numerous car manufacturers' warnings against such use. (*Id.* at ¶ 28-29, 30-31). Plaintiffs allege that the sole intended use of seatbelt extenders is for those individuals whose weight falls above the 99th percentile and cannot buckle a standard seatbelt. (*Id.* at ¶ 15). Plaintiff Anderson purchased a seat belt extender for use with his child's booster seat. (*Id.* at ¶¶ 5, 6, 29, 30-31). Plaintiff Anderson, a plus-sized individual

4

who does not fall above the 99th percentile, also purchased a seatbelt extender for his own use. (*Id.* at ¶ 30). Plaintiff Anderson is the sole Plaintiff to make allegations against Walmart. (*Id.*).

The Court previously entered an Order (Doc. No. 51) granting Defendant eBay's Motion to Compel Arbitration and Stay Proceedings as to Plaintiff Matthew Cooper. The Court has also entered an Order (Doc. No. 52) granting Defendant Amazon's Motion to Compel Arbitration and to Dismiss as to Plaintiff Sabrina Warner. Pending before the Court in this instance is Defendant Walmart's Motion to Compel Arbitration and to Dismiss as to Plaintiff Anderson. (Doc. No. 33).

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that a written provision in a contract "to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This section of the FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) (internal citation and quotation omitted).

Under the FAA, if a party establishes the existence of a valid agreement to arbitrate, the district court must grant the party's motion to compel arbitration and stay or dismiss proceedings until the completion of arbitration. *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing 9 U.S.C. §§ 3-4). Furthermore, "courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citation omitted). Therefore, any doubts regarding arbitrability must be resolved in favor of arbitration. *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003). However, while the courts must respect "the liberal federal policy favoring arbitration agreements . . . arbitration is a matter of contract and a party cannot be required to submit to

5

arbitration any dispute which he has not agreed to submit." *Seawright*, 507 F.3d at 972 (internal citation and quotation omitted). Because arbitration agreements are fundamentally contracts, the enforceability of a purported agreement to arbitrate is evaluated according to applicable state contract law. *Id.*

When considering a motion to dismiss and compel arbitration under the FAA, a court has four tasks:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout*, 228 F.3d at 714 (citing *Compuserve, Inc. v. Vigny Int'l Finance, Ltd.*, 760 F. Supp. 1273, 1278 (S.D. Ohio 1990)). Since Plaintiff Anderson alleges that the agreement is unconscionable, the only task before this Court is whether the parties agreed to arbitrate.

As noted above in a footnote, "in evaluating motions to compel arbitration, 'courts treat the facts as they would in ruling on a summary judgment.' " *Yaroma*, 130 F. Supp. 3d at 1062 (quoting *Kovac*, 930 F. Supp. 2d at 864). "Therefore, the party opposing arbitration bears the burden of 'showing a genuine issue of material fact as to the validity of the agreement to arbitrate.' " *Id.* (citing *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002)). Thus, the court views "all facts and inferences drawn therefrom in the light most favorable" to the party opposing arbitration and "determine[s] whether the evidence presented is such that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists." *Id.*; *see also Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) (stating that the party challenging arbitration has the burden of proving that the claims at issue are not arbitrable).

6

## DISCUSSION

Defendant Walmart asserts that the Terms of Use to which Plaintiff Anderson ostensibly assented when completing his purchase of the seat belt extender from Walmart's website binds him to arbitrate all claims arising between Defendant Walmart and himself. (Doc. No. 34 at 7, 9-10, 11). In response, Plaintiff Anderson challenges the arbitration agreement as being unconscionable. (Doc. No. 42 at 1-3).

### A. Choice of Law

First, the Court must determine which state's law to apply when determining whether a valid agreement exists.[3] When exercising diversity jurisdiction, the Court applies the choice-of-law principles of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Centra, Inc. v. Estrin*, 538 F.3d 402, 409 (6th Cir. 2008). That means Tennessee, of course, in the instant case. The Terms of Use at issue also contain a choice-of-law clause. The clause states that "[t]hese Terms of Use will be governed by and construed under the laws of the United States (including federal arbitration law) and the State of California, without regard to conflicts of law principles." (Doc. No. 35-2 at 16).

Under Tennessee choice-of-law principles, absent a choice-of-law clause, "a contract is presumed to be made with reference to the law of the place where it was entered into[.]" *Williams v. Smith*, 465 S.W.3d 150, 154 (Tenn. Ct. App. 2014) (citing *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 467 (Tenn. 1973)); *see also Evans v. Walgreen Co.*, 813 F. Supp. 2d 897, 915 (W.D. Tenn. 2011), *aff'd*, 559 F. App'x 508 (6th Cir. 2014) ("For contract claims, Tennessee follows the rule of *lex loci contractus*, which provides that a contract is presumed to be governed

---

[3] The parties have made no arguments regarding which law the Court should apply in this case and have cited cases from both potentially applicable jurisdictions. As discussed, regardless of whether Tennessee or California law is applicable, the outcome would be the same.

by the law of the jurisdiction in which it was executed, absent a contrary intent." (citation omitted)).

The record evidence supports that the contract was entered into in Tennessee. Although Tennessee courts appear to have not spoken on the issue, other jurisdictions that have considered the issue have held that a contract was formed in the jurisdiction where a buyer "clicked" the button online to indicate acceptance of the contract. *See Rimel v. Uber Techs., Inc.*, No. 615CV2191ORL41KRS, 2016 WL 6246812, at *5 (M.D. Fla. Aug. 4, 2016), *report and recommendation adopted*, 246 F. Supp. 3d 1317 (M.D. Fla. 2017) (applying Florida's *lex loci contractus* rule and explaining "[a]lthough the parties do not directly address the question of where Rimel accepted the June 21, 2014 Services Agreement and its Arbitration Provision, because he resides in Florida and worked as an uberX driver in Florida, the logical inference is that he accepted the agreement and the Arbitration Provision by clicking 'Yes, I Agree' while he was in Florida. Therefore, Florida law applies to the Arbitration Provision."); *Home Basket Co., LLC v. Pampered Chef, Ltd.*, No. 04-1314-WEB, 2005 WL 82136, at *2 (D. Kan. Jan. 12, 2005) (applying Kansas choice-of-law principles and noting that the plaintiff "accepted the contract when [its employee] clicked on the 'Accept [purchase order]' button in Kansas.").

When ruling on the applicability of an arbitration clause regarding one of the other Plaintiffs in this case, this Court previously found that Tennessee courts would likely reach the same result and found that a contract is entered into in Tennessee, for purposes of the *lex loci contractus* rule, by the act of "clicking" online to accept that agreement while present in Tennessee. *Anderson v. Amazon.com, Inc.*, No. 3:19-CV-01151, 2020 WL 4586173, at *5 (M.D. Tenn. Aug. 10, 2020). Here, like in *Rimel*, there is no direct evidence that Plaintiff Anderson was in Tennessee when he accepted the agreement; however, the fact that Plaintiff Anderson is a Tennessee resident

8

who accepted the agreement in the act of purchasing goods to be delivered to Tennessee, (*see* Doc. No. 35-1), leads to "the logical inference . . . that he accepted the agreement" while he was in Tennessee. *Rimel*, 2016 WL 6246812, at \*5. Therefore, if the Court were to eschew the choice-of-law provision, Tennessee law would apply.

Next, the Court turns to the choice-of-law provision, which selects California law to govern any claims that may arise between the parties. Tennessee courts are "apt to construe [such] choice of-law provisions broadly." *EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, 810 F. App'x 389, 399 (6th Cir. 2020) (citing *Frizzell Const. Co. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 85 (Tenn. 1999)). "Tennessee will honor a choice-of-law provision 'so long as the provision was executed in good faith, there is a material connection between the law and the transaction, and the chosen law is not contrary to the fundamental policies of Tennessee.' " *Id.* (quoting *Town of Smyrna, Tenn. v. Mun. Gas Auth. Of Georgia*, 723 F.3d 640, 645-46 (6th Cir. 2013)) (internal quotation marks omitted). The Court is uncertain that the existence of some offices of Walmart in California is enough to create a material connection between California and Plaintiff Anderson's transaction, as required by Tennessee law.[4] *See EPAC Techs., Inc.*, 810 F. App'x at 399; *see also Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002).

Nevertheless, the Court need not take on this aforementioned issue, as it finds that the outcome of the motion would be the same regardless of an application of Tennessee law (which as discussed above, would apply if the Court did not enforce the choice-of-law provision) or California law.

---

[4] The parties have submitted no evidence specifically on this issue. The Terms of Use indicate that Walmart can be contacted at an address in California. (Doc. No. 35-2 at 17).

**B. Unconscionability**

All of Plaintiff Anderson's arguments fall under the umbrella of unconscionability, and

they focus solely on procedural, as opposed to substantive, unconscionability.[5]

"Unconscionability may arise from a lack of a meaningful choice on the part of one party

(procedural unconscionability) or from contract terms that are unreasonably harsh (substantive

unconscionability)." *Trinity Indus., Inc. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 170 (Tenn. Ct.

App. 2001); *see also Cooper v. MRM Inv. Co.*, 367 F.3d 493, 505 (6th Cir. 2004); *Armendariz v.*

*Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 689 (Cal. 2000). Tennessee courts "lump the

---

[5] Without citation or an explicit discussion, Plaintiff's Response appears to imply that because (according to Plaintiff) the agreement is "browsewrap," the agreement is substantively unconscionable. (Doc. No. 42 at 1-3). Courts typically analyze the distinction between browsewrap and clickwrap as being an indicator of procedural unconscionability. *See e.g.*, *Magid Glove & Mfg. Safety Co., LLC v. Tower Int'l, Inc.*, No. 10 C 7377, 2011 WL 1118883, at *3 (N.D. Ill. Mar. 25, 2011). The Court additionally notes that Walmart's Terms of Use include several provisions aimed at giving fair process to the consumer to resolve a dispute, and since Plaintiff has raised no substantive concerns, he has not met his burden to show that it was substantively unconscionable. As Walmart notes:

> the arbitration agreement to which Anderson agreed provides a fair process by
> which to resolve this dispute. For example,
>
> - The Arbitration Provision requires the arbitrator to "conduct hearings, if any, by teleconference or videoconference, rather than by personal appearances, unless the arbitrator determines upon request by [Anderson] or by [Walmart] that an in-person hearing is appropriate;"
> - The Arbitration Provision requires that such a hearing "will be held at a location which is reasonably convenient to both parties with due consideration of their ability to travel and other pertinent circumstances;"
> - While the arbitrator may determine an arbitral location, in the event the parties cannot agree on a location, Walmart agrees to arbitrate this dispute in a locale convenient to Anderson and his counsel, should they request an in-person hearing; and
> - The Arbitration Provision expressly states that Anderson, or any other Walmart customer, still retains the right to have a federal, state, or local agency bring action against Walmart on behalf of Anderson or any other Walmart customer."

(Doc. No. 43 at 5).

two together" and find unconscionability "when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on one hand, and no honest and fair person would accept them on the other." *Trinity Indus., Inc.*, 77 S.W.3d at 17. Thus, in Tennessee, to establish that an agreement is unenforceable based on unconscionability grounds, it is not enough to establish procedural or substantive unconscionability alone; both must be established. *See Iysheh v. Cellular Sales of Tenn.*, LLC, No. 05-1082, WL 2207122, at *5 (E.D. Tenn. 2018) ("Even if the Agreement was [procedurally unconscionable], it is enforceable unless plaintiff can also show it is substantively unconscionable."). Similarly, California requires both elements of unconscionability, but employs a "sliding scale" which indicates that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz*, 6 P.3d at 689 (citation omitted).

Plaintiff Anderson's primary argument is that the Court should consider Walmart's Terms of Use to be a "browsewrap," instead of a "clickwrap," agreement. (Doc. No. 42 at 1).

Contracts on the internet generally consists of either a "clickwrap" agreement or a "browsewrap" agreement. Sometimes a court will find a particular agreement to be a hybrid "clickwrap/browsewrap" agreement if it possesses qualities of both primary types of agreements. *Crawford v. Beachbody, LLC*, No. 14CV1583-GPC KSC, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014). A browsewrap agreement does not require the user to manifest assent to the contract; it instead provides notice to the user of the agreement through a hyperlink posted somewhere on the website. *In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*, 893 F. Supp. 2d 1058, 1063 (D. Nev. 2012) (finding no enforceable contract and the Terms of Use to be

browsewrap when the hyperlink was inconspicuously listed at the bottom of the webpage). Since browsewrap agreements do not require any affirmative action on the part of the user, the determination of the validity of a browsewrap agreement will depend on if the user had actual or constructive notice of the website's terms and conditions. *Id.* If there is no evidence of actual knowledge, validity will turn on if the website provides the user with reasonable notice. *Id.*

In contrast, a clickwrap agreement is an agreement as to which a website user must manifest assent to the terms of the agreement by clicking on an icon. *See Traton News, LLC v. Traton Corp.*, 528 F. App'x 525, 526 n.1 (6th Cir. 2013). Federal courts have consistently upheld clickwrap agreements. *See, e.g.*, *id.*; *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1256 (10th Cir. 2012) (citing *Smallwood v. NCsoft Corp.*, 730 F. Supp. 2d 1213, 1226 (D. Haw. 2010)) ("Clickwrap agreements are increasingly common and 'have routinely been upheld.'"); *Nazaruk v. eBay Inc.*, No. 2:06CV242DAK, WL 2666429, *3-4 (D. Utah 2006). These clickwrap agreements have been found valid even where the party was required to click on a link to view the terms of the agreement. *See Noye v. Johnson & Johnson*, No. 1:15-CV-2382, 2017 WL 5135191, at *8 (M.D. Pa. Nov. 6, 2017) (holding that a clickwrap agreement was not procedurally unconscionable under Michigan law even though the party had to click on a link to view the arbitration agreement); *Magid Glove & Mfg. Safety Co., LLC v. Tower Int'l, Inc.*, No. 10 C 7377, 2011 WL 1118883, at *3 (N.D. Ill. Mar. 25, 2011) (holding that a clickwrap agreement that included a link to its terms and conditions was not procedurally unconscionable, because "a reasonable user could easily navigate to the Terms and Conditions through only two mouse clicks"); *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, No. H–08–2059, 2010 WL 1463451, at *5–6 (S.D. Tex. Apr.12, 2010) (finding that a clickwrap agreement was not unconscionable where it provided address of website and only three mouse clicks were required to access terms and conditions from home page).

Some courts have felt more comfortable categorizing agreements that require a separate link be clicked as hybrid clickwrap/browsewrap agreements (though some courts have found these to be pure clickwrap agreements, as discussed above). But regardless of the label, these agreements are also routinely upheld. *Crawford*, 2014 WL 6606563, at *3 (upholding agreement when plaintiff had to click a "Place Order" button with a sentence immediately above containing hyperlinked Terms and Conditions); *Kim v. Tinder, Inc.*, No. CV 18-03093 JFW (AS), 2018 WL 6694923, at *2 (C.D. Cal. July 12, 2018) (upholding hybrid agreement when plaintiff clicked on a log-in button directly below a hyperlink to the terms of use); *Zamber v. Am. Airlines, Inc.*, No. 16-23901-CV, 2020 WL 1445479, at *3 (S.D. Fla. Feb. 11, 2020) (noting that hybrid agreements are regularly upheld and holding agreement enforceable when hyperlink was located above a log-in button).

Plaintiff Anderson argues that he did not "check a box," he was not required to scroll through Walmart's terms of agreement, and he did not click on anything saying "I agree." (*Id.* at 2). Therefore, Plaintiff Anderson argues that he never assented to arbitrate the dispute before the Court. (*Id.* 3). Plaintiff Anderson additionally argues that the Arbitration Agreement is procedurally unconscionable because "no reasonable consumer" would be willing to give up his or her right to a jury, to sue Defendant Walmart in court, or to file a class action suit "simply because they clicked 'Place Order,'" especially since the 17-page Terms of Use could only be accessed by clicking a separate link (*Id.* at 3). In response, Defendant Walmart argues that Plaintiff Anderson misconstrues the applicable law regarding "browsewrap" versus "clickwrap" and that the agreement is not procedurally or substantively unconscionable. (Doc. No. 43 at 1).

It is clear to the Court that the Terms of Use in this instance were not pure browsewrap as argued by Plaintiff Anderson. The Terms of Use were not hidden from the consumer, and they required assent and confrontation by the user. The hyperlink was prominently displayed directly

13

above the "Place Order" button which was required to complete a purchase. (Doc. No. 36 at 3). Regardless of whether the agreement constitutes clickwrap or hybrid clickwrap/browsewrap, the agreement is of the type that has regularly been upheld by courts. *See e.g.*, *Magid Glove & Mfg. Safety Co.*, 2011 WL 1118883, at \*3; *Crawford*, 2014 WL 6606563, at \*3. With just the single click of a mouse before placing his order, Plaintiff Anderson would have been able to access the Terms of Use, as well as the Arbitration Clause. Under these circumstances, the Court cannot say that the Terms of Use and Arbitration Clause are procedurally unconscionable, regardless of whether they are deemed clickwrap or clickwrap/browsewrap.

Additionally, Plaintiff Anderson argues that the Terms of Use are unconscionable because they require clicking on a separate link and consist of "a seventeen page, narrow-margined, single-space document that purports to govern everything from use of Walmart's websites to promotional materials, to use of gift cards, to Walmart's intellectual property rights, to its copyrights, and, yes, eventually to an arbitration clause appearing on page 16." (Doc. No. 42 at 1, 3).

Though the Arbitration Clause is located on pages 15 through 16 of the Terms of Use, the information regarding the existence of the clause is located in two places on the first page: at the top of the page and in the middle in bold and all capital letters. (Doc. No. 35-2 at 2, 15-16). Regardless, even though the Court can understand where Plaintiff Anderson is coming from in complaining about lengthy boilerplate language, the reality is that a party's failure to read a contract he or she signed is not a valid indicator of procedural unconscionability nor a defense to enforcement. *See Wofford v. M.J. Edwards & Sons Funeral Home Inc.*, 490 S.W.3d 800, 812 (Tenn. Ct. App. 2015) ("[F]ailure to read an agreement does not absolve a contracting party from the terms contained in an agreement."); *Desert Outdoor Advert. v. Superior Court*, 196 Cal. App. 4th 866, 872 (2011) ("A cardinal rule of contract law is that a party's failure to read a contract, or

14

Case 3:19-cv-01151   Document 53   Filed 09/29/20   Page 14 of 16 PageID #: 339

to carefully read a contract, before signing it is no defense to the contract's enforcement."). Accordingly, Plaintiff Anderson has not met his burden to demonstrate that the Terms of Use are procedurally unconscionable.

In light of all proffered evidence, the Court finds Plaintiff Anderson has failed to make a sufficient showing of either procedural or substantive unconscionability. Given that both are required under Tennessee and California law, Plaintiff Anderson's unconscionability defense fails regardless of the applicable state law.

## CONCLUSION

As noted above, when considering a motion to dismiss and compel arbitration under the FAA, a court has four tasks:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout*, 228 F.3d at 714 (citing *Compuserve, Inc.*, 760 F. Supp. at 1278). For the above-mentioned reasons, the Court determines the parties agreed to arbitrate by the terms of the Section 20 in the Terms of Use. Additionally, the scope of the Arbitration Agreement covers all of Plaintiff Anderson's claims, as it requires that "all disputes arising out of or related to these Terms of Use or any aspect of the relationship between you and Walmart" will be arbitrated. (Doc. No. 35-2 at 16). Given that Plaintiff Anderson purchased the seatbelt extender at issue from Defendant Walmart, Plaintiff Anderson's claim is within the scope of the Arbitration Clause. Regarding the third task, the Court need not examine the arbitrability of claims, given that Plaintiff Anderson raises no federal statutory claims. (*Id.* at ¶¶ 45-60).

As for the fourth task, two other Plaintiffs also initially brought claims in this case (though not against Walmart). One of the Plaintiffs, Plaintiff Cooper, was previously compelled to arbitrate his claims (all of which were brought against Walmart's co-defendant eBay, Inc.), and the action was stayed as to that Plaintiff. (Doc. No. 51). Plaintiff Warner failed to file a response to a motion to arbitrate and was compelled to arbitrate, with her claims (all of which were brought against Walmart's co-defendant Amazon.com, Inc.) being dismissed. (Doc. No. 52). In compelling arbitration of Plaintiff Anderson's claims, there are no matters left pending before the Court regarding Plaintiff Anderson and Defendant Walmart. In cases where all of a Plaintiff's claims are referred to arbitration, the case may be dismissed instead of stayed. *Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009); *see also Doss v. Nordstrom*, Inc, No. 3:15-CV-00904, 2016 WL 4272334, at *5 (M.D. Tenn. Aug. 15, 2016), *report and recommendation adopted sub nom. Doss v. Nordstrom, Inc.*, No. 3:15-CV-904, 2016 WL 5793238 (M.D. Tenn. Sept. 22, 2016). The Court perceives that so doing makes sense here, particularly since all claims of all other parties are now in arbitration. Therefore, the Court dismisses the claims brought by Plaintiff Anderson without prejudice.

Accordingly, the Court **GRANTS** Defendant Walmart's Motion to Compel Arbitration and to Dismiss the action as to Plaintiff Anderson.

IT IS SO ORDERED.

Eli Richardson

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

16